## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DAVID A. SIMON et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. CIV-21-132-G** |
| **HEALTH CARE SERVICES** | ) |
| **CORPORATION d/b/a BLUE CROSS** | ) |
| **BLUE SHIELD OF OKLAHOMA** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>ORDER</u>

Now before the Court is the Motion to Compel Arbitration (Doc. No. 16) filed by
Defendants Health Care Service Corporation, doing business as Blue Cross and Blue Shield
of Oklahoma ("BCBSOK"), and Dental Network of America, LLC ("DNA") (collectively,
"Defendants"). Plaintiffs David A. Simon ("Dr. Simon"), Rahill & Simon, LLC, David A.
Simon, DDS, PLLC, and OKC Dentistry Associates, PLLC ("OKC Dentistry")
(collectively, "Plaintiffs") have responded in opposition (Doc. No. 17). Defendants have
replied (Doc. No. 18).

### BACKGROUND

### I.   *Summary of the Pleadings*

In their Amended Complaint (Doc. No. 14), Plaintiffs allege that Defendants
regularly failed to fully reimburse Plaintiffs for medical services provided by Plaintiffs to
persons insured by BCBSOK, thereby violating contracts between Plaintiffs and BCBSOK.
*See id.* at ¶¶ 12-22.

Plaintiffs allege that they entered into a contract with BCBSOK in 2004 titled "Blue Traditional Network Participating Dentist Agreement" (the "2004 Agreement").  *See id.* ¶ 12; 2004 Agt. (Doc. No. 17-1).  By its express terms, the 2004 Agreement renewed annually, subject to Plaintiffs providing proof of licensing and liability insurance.  Am. Compl. ¶ 13.  Plaintiffs allege that they were parties to this agreement with BCBSOK "either individually or through entities in which they practiced, e.g., Rahill & Simon, LLC., David A. Simon, DDS, PLLC, and OKC Dentistry Associates PLLC."  *Id.* ¶ 14.  The 2004 Agreement, attached as an exhibit to Plaintiffs' Response to the Motion to Compel Arbitration, states that it is an agreement between BCBSOK and "the undersigned."  *See* 2004 Agt. at 3.  The 2004 Agreement is signed by Dr. Simon and by C. Wayne Wallace as the representative of BCBSOK.  *See id.* at 16.  There are no other signatories to the 2004 Agreement.

The 2004 Agreement, and the annual renewals, included a network fee schedule that set out the amounts to be paid to Plaintiffs for particular medical procedures.  *See* Am. Compl. ¶¶ 15-16.  BCBSOK contracted with DNA as third-party administrator for the 2004 Agreement and its annual renewals, allowing DNA to set reimbursement rates for medical procedures performed by Plaintiffs pursuant to the 2004 Agreement and the renewals.  *Id.* ¶ 17.  Plaintiffs allege that Defendants breached the 2004 Agreement and renewal contracts from at least 2015 through the present by underpaying reimbursements for medical procedures.  *See id.* ¶¶ 18-19.  Plaintiffs seek damages for Defendants' breach of contract for the alleged breaches occurring from calendar year 2015 through calendar year 2019.  *See id.* ¶¶ 20-21.

In a section titled "Punitive Damages," Plaintiffs also allege that Defendants' conduct in underpaying contractual reimbursements constitutes "fraud, deception and a pattern and practice designed to take advantage of Plaintiffs and others similarly situated as dentists in these networks." *Id.* ¶ 24. Specifically, Plaintiffs allege that BCBSOK made representations regarding the payments to be made, that Plaintiffs relied on those representations, and that BCBSOK manipulated the classification of services to underpay Plaintiffs' claims under the contracts. *See id.* ¶¶ 24-25. Plaintiffs allege that Defendants' intentional conduct in breaching the agreement, "evidenced by [their] long-term conduct, history of underpayments, pattern and practice, fraud (either actual or constructive) and deception," entitles Plaintiffs to recover punitive damages. *Id.* ¶ 26.

## II. *Defendants' Motion to Compel Arbitration*

Defendants move that the Court stay this action and require Plaintiffs' claims to be resolved through arbitration. In support of its Motion to Compel Arbitration, Defendants contend that Dr. Simon sold his practice to Matthew Guffey, DDS ("Dr. Guffey") but continued to work as Dr. Guffey's employee. *See* Defs.' Mot. (Doc. No. 16) at 10-11. On or before December 4, 2019, Drs. Simon and Guffey sent a letter (the "Sale Letter") to BCBSOK informing BCBSOK that Dr. Simon on January 2, 2020, would be selling his practice to Dr. Guffey, that the entity "David A. Simon DDS PPLC w[ould] no longer be active" effective December 31, 2019, and that the new dentistry practice would begin

operating as OKC Dentistry Associates PLLC on January 2, 2020.  Sale Letter (Doc. No. 16-2) at 2.[1]

On December 4, 2019, OKC Dentistry Associates PLLC submitted a practice application to BCBSOK, signed by Dr. Guffey and identifying Drs. Guffey and Simon as the dentists for the new company.  *See* Defs.' Mot. at 10; *id.* Ex. 3 (Doc. No. 16-3).  On December 10, 2019, BCBSOK sent letters to Dr. Guffey and Dr. Simon notifying them that the practice application had been approved.  *See* Defs.' Mot. at 11; *id.* Exs. 4-5 (Doc. Nos. 16-4, 16-5).

Around this same time, a new contract with BCBSOK was executed (the "2019 Agreement").  Defs.' Mot. at 11; *see* 2019 Agt. (Doc. No. 16-1).  The preamble to the 2019 Agreement states that it is an agreement between BCBSOK and "Provider."  2019 Agt. at 2.  The field designated to identify the "Provider or group of Providers" is left blank.  *Id.* Section 1.9 of the 2019 Agreement defines Provider as "the contracting Dentist and/or dental office(s) under this Agreement, including dentists who practice specialty services such as, but not limited to, orthodontics."  *Id.* § 1.9.  The 2019 Agreement is signed by Dr. Guffey in the signature field designated for the "Owner Provider," with an accompanying printed date of October 11, 2019.  *See* 2019 Agt. at 9.  Below Dr. Guffey's signature, "OKC Dentistry Associates PLLC" is printed in the field designated "Directory Name of Dental

_____

[1] The letter is undated but bears a receipt stamp of "DEC 04 2019."  Sale Letter at 2.

Office." *Id.*   The final page is also signed by a representative of BCBSOK with a handwritten date of December 25, 2019.  *See id.*[2]

The bottom of this signature page reads in bold type: "**Please List Any Associates and Additional Office Locations on the Reverse Side**." *Id.*  The next page of the 2019 Agreement is an untitled form with spaces to list practice associates and additional offices. *See id.* at 10.  The page bears a bolded header that states: "**It is the responsibility of the Owner Provider to notify BCBSOK or Dental Consultant of any associate changes**." *Id.*  On this page, Dr. Simon signed in the field designated for "Associates," identifying his practice type as general dentistry.  The field also includes his printed name and a date of October 11, 2019.  *Id.*[3]

Section 9.6 of the 2019 Agreement contains the following "Dispute Resolution Clause":

> Dispute Resolution.  In order to avoid the cost and time consuming nature of litigation, the parties hereto shall attempt to resolve any dispute between BCBSOK and Provider arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between BCBSOK and Provider shall be resolved using alternative dispute resolution mechanisms instead of litigation.  BCBSOK and Provider agree and acknowledge that it is their mutual intention that this provision be

---

[2] The 2019 Agreement specifies that is it effective as of the BCBSOK countersignature date—i.e., December 25, 2019.  *See* 2019 Agt. at 9.

[3] The 2019 Agreement also includes a "BLUECHOICE PPO NETWORK ADDENDUM" that follows the same pattern as the primary agreement—there is a signature page signed by Dr. Guffey in the field designated for the "Owner Dentist," dated October 11, 2019, and it is countersigned by a representative of BCBSOK with a date of December 25, 2019.  *Id.* at 11.  The following Addendum page presents a bolded header like that in the primary agreement; again, Dr. Simon signed in a field designated for "Associates," with the same printed name and date.  *Id.*

construed broadly so as to provide for mediation and/or arbitration of all disputes arising out of their relationship as third-party Payer and Provider.

*Id.* § 9.6.   Section 9.6 then sets forth a two-stage procedure for alternative dispute resolution, whereby the parties agree to participate in mediation and then agree to submit the dispute to arbitration in the event mediation is unsuccessful.   *See id.* § 9.6(1), (2).

Neither party disputes the authenticity of the 2004 Agreement or the 2019 Agreement, which are attached as exhibits to the parties' motion papers.

DISCUSSION

I.    *Applicable Standards*

Defendants seek to stay these proceedings and compel the parties to submit this dispute for arbitration pursuant to section 4 of the Federal Arbitration Act ("FAA"). Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . .  The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

"The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."   *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).   "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed

to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Courts "look to state law principles of contract formation to tell us whether an agreement to arbitrate has been reached." *Avedon Eng'g*, 126 F.3d at 1287.

"When a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated." *Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000). When there is such a broad arbitration clause, "[t]he strong presumption is in favor of issues being subject to arbitration." *Id.* "When it's apparent . . . that no material disputes of fact exist it may be permissible and efficient for a district court to decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration." *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014).

II.    *Analysis*

Defendants move to stay these proceedings and submit the entirety of this dispute for arbitration pursuant to the Dispute Resolution Clause in the 2019 Agreement.[4]  There is no dispute that the 2019 Agreement is a valid and enforceable agreement and that it contains an alternative dispute resolution provision.  The issue in dispute here is whether the Dispute Resolution Clause binds all the plaintiffs in this action, requiring submission of all claims for arbitration, and whether the Dispute Resolution Clause is enforceable if it

---

[4]  Although the Dispute Resolution Clause provides for mediation and then—if unsuccessful—arbitration, the Motion, response, and reply do not contemplate or suggest mediation, only arbitration.

does.[5]

Under Oklahoma law,[6] a contract must be construed so "as to give effect to the mutual intention of the parties, as it existed at the time of contracting." Okla. Stat. tit. 15, § 152. With respect to written contracts, the parties' intent should be gleaned "from the writing alone, if possible," *id.* § 155, and from the language employed therein, so long as the language is "clear and explicit, and does not involve an absurdity," *id.* § 154. Furthermore, "contracts must be construed in their entirety, and not from detached and isolated portions." *Mortg. Clearing Corp. v. Baughman Lumber Co.*, 435 P.2d 135, 138 (Okla. 1967).

The Dispute Resolution Clause of the 2019 Agreement requires the parties to attempt to resolve through alternative dispute resolution "any dispute between BCBSOK and Provider arising out of, relating to, involving the interpretation of, or in any other way pertaining to this Agreement or any prior Agreement between BCBSOK and Provider." 2019 Agt. § 9.6. Defendants argue that Plaintiff OKC Dentistry and Plaintiff Dr. Simon are bound by the 2019 Agreement, including the Dispute Resolution Clause, because their signatures evidence "their intent to be bound by it." Defs.' Mot. at 16.

---

[5] Because the Court resolves the question of arbitration based on the 2019 Agreement, at least as to OKC Dentistry and Dr. Simon, it does not reach the disputed question of whether the 2004 Agreement incorporated a dispute resolution clause requiring arbitration or any other kind of alternative dispute resolution.

[6] The 2019 Agreement provides that it "shall be governed by the laws of the State of Oklahoma." *See* 2019 Agt. § 9.7.

A.  *OKC Dentistry*

The Court finds that OKC Dentistry is bound by the Dispute Resolution Clause in the 2019 Agreement.  The December 2019 letter from Dr. Simon and Dr. Guffey to BCBSOK states that their dental office will begin operating as OKC Dentistry beginning on January 2, 2020.  *See* Sale Letter at 2.  The 2019 Agreement lists OKC Dentistry on the signature page as the name of the dental office for which Dr. Guffey is the "Owner Provider."  2019 Agt. at 9.  Therefore, to any extent that Plaintiffs pursue claims for breach of contract against BCBSOK for underpayment of claims for reimbursement submitted by or through OKC Dentistry,[7] they must do so through arbitration.  *See* 2019 Agt. § 9.6; *Brown*, 220 F.3d at 1184.

B.  *Dr. Simon*

Dr. Simon argues that he is not a party to the 2019 Agreement and therefore is not bound by its Dispute Resolution Clause.  Alternatively, Dr. Simon argues that even if he is a party to the agreement, its Dispute Resolution clause should not be enforced.  The Court finds that Dr. Simon is a party to the 2019 Agreement and therefore bound by its terms, including the Dispute Resolution Clause.

Dr. Simon asserts that his two signatures do not indicate his assent to the 2019 Agreement and its Addendum but were instead a mere acknowledgement that he was Dr. Guffey's employee.  *See* Pls.' Resp. at 8-9.  That conclusion is not supported by the text or

---

[7] The December 2019 letter from Dr. Simon and Dr. Guffey to BCBSOK states that the dental office will begin operating under OKC Dentistry beginning on January 2, 2020.  *See* Sale Letter at 2.  The Amended Complaint seeks relief for alleged breaches occurring from 2015 through 2019.  *See* Am. Compl. ¶ 19.

the structure of the 2019 Agreement.  The preamble of the 2019 Agreement defines "Provider" to include the plural and recites that each Provider "is duly licensed and engaged in the practice of dentistry."  2019 Agt. at 2.  Section 1.9 further defines Provider "as the contracting Dentist and/or dental office(s) . . . including dentists who practice specialty services . . ." under the 2019 Agreement.  *Id.* § 1.9 ("The term 'Provider' is used interchangeably with the term 'Dentist.'").  Dr. Simon's signatures appear in the portion of the contract provided to identify "Associates," immediately following the signatures of Dr. Guffey and BCBSOK and directly below spaces provided for additional dental offices.  *See id.* at 9-12.  Under Section 3.2, the "Provider warrants and represents that he or she is licensed . . . to practice dentistry."  *Id.* § 3.2.  Section 3.3 requires a Provider to deliver a standard of care that conforms to American Dental Association standards.  *See id.* § 3.3.  And Section 6.4 allows BCBSOK to terminate the 2019 Agreement if a Provider's dental license is revoked.  *See id.* § 6.4.  Taken altogether, these provisions reflect that each dentist who signed the 2019 Agreement is a Provider and subject to the various terms and requirements applicable to a Provider.[8]

---

[8] Dr. Simon argues that the Court should infer that he is not a party to the 2019 Agreement because BCBSOK attached a copy of the 2019 Agreement to the welcome letter it sent to Dr. Guffey, but not to the welcome letter it sent to Dr. Simon.  *See* Pls.' Resp. at 12-13. He also argues that he should not be bound by the 2019 Agreement because he did not sign or initial the pages preceding the signature pages.  *See id.* at 13.  And he argues that he should not be bound by the 2019 Agreement because, although he signed it, he did not read it and was not warned about its potential legal consequences.  *See id*.  None of these are availing arguments under the law.  *See Hardrick v. David Stanley Dodge, LLC*, No. CIV-15-540-C, 2015 WL 13573979, at *2 (W.D. Okla. June 4, 2015) ("[E]ven if neither Plaintiff signed directly under the arbitration clause, that provision remains enforceable as part of the contract signed by Plaintiffs."); *Franco v. State ex rel. Bd. of Regents of Univ. of Okla.*, 482 P.3d 1, 9 (Okla. Civ. App. 2020) (explaining that, absent circumstances not

Dr. Simon's conduct also indicates he understood he was a party to the 2019 Agreement. He concedes that the December 2019 Sale Letter "effectively terminated" the 2004 Agreement. Pls.' Resp. at 7. And he does not dispute that he has been reimbursed for more than 450 claims using the tax identification number listed in the 2019 Agreement. *See* Defs.' Reply (Doc. No. 18) at 3, 8. The Court finds that Dr. Simon is a Provider under the 2019 Agreement and, therefore, subject to the broad reach of the Dispute Resolution Clause set forth in that agreement.

Finally, Dr. Simon offers multiple arguments for why the Dispute Resolution Clause is unconscionable and should not be enforced, even if the Court finds he is party to the 2019 Agreement. An unconscionable contract is one where "in light of the general commercial background and commercial needs of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties." *Barnes v. Helfenbein*, 548 P.2d 1014, 1020 (Okla. 1976). Put differently, an unconscionable contract is one that lacks meaningful choice and reflects a bargain "which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other." *Id.* Dr. Simon argues that the 2019 Agreement and its Dispute Resolution Clause are unconscionable because he lacked any meaningful choice but to sign it, because it was a contract of adhesion, and because retroactive arbitration agreements are unconscionable as a matter of law. *See* Pls.' Resp. at 14-18.

---

present here, a party who signs a contract but does not read it is nevertheless bound by its terms).

These arguments lack merit.  First, whether a party lacked any meaningful choice to sign a contract is determined by "all the circumstances surrounding the transaction", including "whether the aggrieved party had a reasonable opportunity to understand the terms of the contract and whether the important terms were hidden in a maze of fine print or were minimized by deceptive sales practices." *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1236-37 (10th Cir. 2007) (internal quotation marks omitted) (applying Oklahoma law). There has been no allegation or evidence presented here that would suggest that Dr. Simon lacked the opportunity to understand the terms of the contract or that BCBSOK or any other party used deceptive practices to procure his signature.  Second, even if the 2019 Agreement was a contract of adhesion, that does not necessarily render it unconscionable or unenforceable.  *See Hometown Home Health Inc. v. MISYS Healthcare Sys. LLC*, No. CIV-08-934-R, 2008 WL 11419002, at *2 (W.D. Okla. Oct. 29, 2008).  Instead, the question is whether the agreement to arbitrate is substantively unconscionable, which Dr. Simon has failed to establish.  *See id.*  Third, a retroactive arbitration agreement is not necessarily unconscionable.  *See In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1201-02 (10th Cir. 2016) (applying Oklahoma law) (holding that a contract's arbitration clause applied to disputes arising from events predating the agreement).  And the decision cited by Plaintiffs to support the proposition that the arbitration agreement is unconscionable, *Bilbrey v. Cingular Wireless, L.L.C.*, 164 P.3d 131 (Okla. 2007), is not applicable to the facts of this case.  The *Bilbrey* Court examined the narrow issue of whether a retroactive arbitration clause in a consumer adhesion contract was unconscionable as applied to an ongoing class action lawsuit.  *See*

12

*id.* at 136-37.  Here, Dr. Simon did not bring suit until after agreeing to the retroactive Dispute Resolution Clause.

Dr. Simon also argues that Oklahoma law exempts preferred provider agreements like the 2019 Agreement from arbitration, through operation of the federal McCarran-Ferguson Act.  *See* Pls.' Resp. at 18.  This Court has previously rejected that same argument.  *See McKinney v. Cmty. Health Sys., Inc.*, No. CIV-20-365-PRW, 2020 WL 7082713, at *1 (W.D. Okla. Dec. 3, 2020) ("The Court finds, in accordance with well-established precedent, that a state statute regulating a preferred-provider agreement does not regulate the 'business of insurance' for purposes of the McCarran-Ferguson Act. Accordingly, the Federal Arbitration Act controls and requires enforcement of the arbitration provision.").

In sum, the Court finds that Dr. Simon is bound by the Dispute Resolution Clause in the 2019 Agreement and that the broad reach of that provision requires him to arbitrate the claims he has asserted in this lawsuit.

### C.  *Rahill & Simon, LLC, and David A. Simon, DDS, PLLC*

Defendants argue that "any claim that Dr. Simon wants to assert against BCBSOK for alleged underpayment of claims – regardless of whether the claim was submitted to BCBSOK when he was practicing at OKC Dentistry, Rahill & Simon, or Simon LLC – must be resolved in arbitration."  *See* Defs.' Mot. at 8.  Beyond this conclusory statement, however, Defendants fail to address how the business entities Rahill & Simon, LLC, and David A. Simon, DDS, PLLC (collectively, the "Simon Business Entities"), are bound by

the Dispute Resolution Clause in the 2019 Agreement or otherwise subject to a binding agreement to arbitrate. For their part, Plaintiffs also fail to address the issue.

In the absence of a developed argument, the Court finds that Defendants have not shown that the claims of the Simon Business Entities are subject to a binding agreement to arbitrate.

II.    *Stay or Dismissal*

Defendants primarily request that this action be stayed pending resolution of Plaintiffs' claims through arbitration. *See* Defs.' Mot. at 7. Defendants seek, in the alternative, dismissal of Plaintiffs' claims for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6) and the striking of Plaintiffs' claim for punitive damages. *See* Defs.' Mot. at 20-23.

The FAA provides that the Court must, upon finding that a dispute is subject to arbitration, stay the proceedings pending the outcome of the arbitration. *See* 9 U.S.C. § 3; *see also Drinnon v. Drinnon Const., LLC*, No. CIV-14-819-C, 2014 WL 6620937, at *3 (W.D. Okla. Nov. 19, 2014). Therefore, the Court finds that the case should be stayed as to Plaintiff OKC Dentistry's and Plaintiff Dr. Simon's claims against Defendants.

The Court further finds that the case should be stayed as to the Simon Business Entities' claims against Defendants. Although not addressed by the parties, the preliminary view of the Court is that the claims of these legal entities are intertwined with the claims of Dr. Simon to such a degree that it would not be reasonably possible to move forward with the Simon Business Entities' claims without encroaching upon the parties' agreement to arbitrate the claims of Dr. Simon.

In light of this circumstance, the Court elects to stay the entire case pending the completion of arbitration.  To that end, the Court reserves ruling on Defendants' Motion to the extent it seeks dismissal of the Simon Business Entities' claims pursuant to Rule 12(b)(6) and the striking of the Simon Business Entities' claims for punitive damages.  The decision to stay the entire case is made without prejudice to any party requesting that the Court lift the stay and proceed to litigation of the remaining claims.  The decision is also without prejudice to either party moving to compel arbitration of the claims made by the Simon Business Entities upon a proper showing that the Simon Business Entities are a party to, or otherwise subject to, an applicable, binding agreement to arbitrate.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration (Doc. No. 16) is GRANTED IN PART and DENIED IN PART.  This action is STAYED pending the completion of arbitration.

IT IS SO ORDERED this 29th day of March, 2024.

CHARLES B. GOODWIN
United States District Judge